### E. and E. MORSE *v.* HOVEY and CLOYES.

### A. and E. MORSE *v.* The same defendants.

The discharge of a bankrupt, under the act of Congress to establish a uniform system of bankruptcy in the United States, passed in August, 1841, is a bar to any claim made by his sureties for money which they have been compelled to pay for him after his discharge, on a contract made prior to his bankruptcy.

A bill was filed by two sureties to avoid on the ground of usury, a promissory note given to H., on which a suit at law had been commenced against all the makers, in the name of C., for H.'s benefit. The bill alleged that the principal debtor, although discharged from his debts pending the suit at law, could not be a witness therein to prove the usury, because he was a party defendant; and that the complainants could not establish the fact, except by his testimony, or by H.'s admissions. The answer on oath of H. was waived, and the principal debtor was not made a defendant in the bill.

A demurrer to the bill for want of equity, was overruled.

It was also held that it was unnecessary to make the principal debtor a party.

The complainant may require an answer on oath from one defendant, and waive it as to another, in the same suit, where their interests are distinct.

Under the act of 1837, to prevent usury, the Court of Chancery is required to entertain jurisdiction of suits to cancel usurious contracts ; and it will grant such relief

Morse v. Hovey and Cloyes.

after a suit at law is commenced, whenever it appears that the defence at law is
doubtful or imperfect, and it is clear in equity.

Although that act authorizes the defendant at law to examine the plaintiff as a wit-
ness on the trial, it does not compel him to rely upon such interested testimony if
he can establish the usury otherwise, either at law or in equity.

    Oct. 23 ; Nov. 9, 1843.

THESE causes were precisely similar, and were heard to-
gether.

The bill in the first cause was filed in March, 1843, and set
forth the following case :

On the 11th day of December, 1835, the defendant, Hovey,
loaned $1212 to Sylvester Thayer, and to secure its payment,
a negotiable promissory note of that date was made by Thayer,
which the complainants signed, as his sureties, and thereby
the makers of the note promised to pay to Hovey $1250, in one
year from its date, with interest.  In January, 1842, a suit on
the note was commenced against all the makers, in the Su-
preme Court, in the name of the defendant, Cloyes.  The com-
plainants pleaded the general issue in that suit, and Thayer
put in the like plea, with a notice that he would prove the
usury above stated.  On the 10th of February, 1842, Thayer
presented his petition to the District Court of the United States
for a discharge under the Bankrupt Act, passed by Congress in
August preceding.  He was declared a bankrupt in due time,
and on the 15th of June, 1842, was regularly discharged from
his debts, and received his certificate.  He thereupon pleaded
his discharge, *puis darrein continuance*, in Cloyes's suit.
Cloyes replied to the plea, taking an issue of fact upon it.
The suit was noticed for trial at the circuit in Herkimer
county, which was appointed to be held on the first Monday
of April, 1843.  Cloyes has no interest in the note ; it is prose-
cuted in his name, for Hovey's benefit.  The complainants
cannot prove the usury, except by the testimony of Thayer, or
by Hovey's admission of it by his answer, or otherwise.  The
courts of law hold that no one but the plaintiff on the record
can be examined as a witness by the defendant at law, under
the act of 1837, to prevent usury.  Thayer is a party in the

Morse v. Hovey and Cloyes.

suit at law, and cannot be used as a witness.   The complain-
ants are entitled to the benefit of Thayer's testimony.

The bill waived an answer on oath from Hovey, but required
one from Cloyes.   It prayed for an injunction to restrain the
suit at law, and that the usurious note might be delivered up
and cancelled.

The defendants demurred to the bill for want of equity.
Also, because Thayer was not made a party, and because the
bill required one of the defendants to answer on oath, and not
the other.

*T. Jenkins,* in support of the demurrer.

*G. F. Comstock,* for the complainants.

THE ASSISTANT VICE-CHANCELLOR.—Before proceeding to
the more substantial grounds of demurrer, it will be well to con-
sider that founded upon the omission to make Thayer a party.
His discharge under the Bankrupt Act fully absolves him from
liability to the defendant upon the note in question.   I was
pressed at the hearing to examine the constitutionality of the
late Bankrupt Act, both in reference to its voluntary principle,
and its operation upon existing contracts ; but I felt bound to
decline to enter upon that field, because its ultimate and con-
trolling exposition must come from the federal courts, and so
far as we were then advised, the decision of a majority of the
Justices of the Supreme Court of the United States had already
been given in their respective circuits, in favor of the constitu-
tionality of the law.   Since the hearing, the Supreme Court of
this state have affirmed its validity, in the case of *Kunzler* v.
*Kohaus,* decided at the late October term of that court.(*a*)

Assuming that Thayer is discharged from the debt, it is next
objected, that he still has an interest, because he will be liable
to the complainants, if they are ultimately compelled to pay
any part of the debt.   I think the discharge, by the plain con-
struction of the Bankrupt Act, is a bar to any future claim of
the sureties.   The fourth section of the Act declares that the

(*a*) Which has been since reported in 5 Hill's R. 317.

discharge and certificate shall " be deemed a full and complete " discharge of all debts, contracts, and other engagements of such " bankrupt, *which are proveable under this Act.*" By the fifth section, all creditors whose debts are not due, &c., and all *sureties, endorsers, &c., or other persons having uncertain or contingent demands against such bankrupt,* shall be permitted to come in and prove such debts, &c., under the Act. By a subsequent clause of the same section, it is provided, that " *no credi-* " *tor* or other person coming in and proving his debt or other " claim, shall be allowed to maintain any suit" therefor, " but " shall be deemed thereby to have waived all right of action " and suit against such bankrupt." It was argued, that the effect of this provision was, to give the surety the option to come in and prove, and thereby to waive his future action, or to omit proving his demand, and hold the bankrupt liable upon the payment being thereafter made for his benefit ; and it was said that the clause was otherwise unmeaning and insensible. This construction is not sound. The words " no creditor," in the clause in question, embrace every species of direct creditors of the bankrupt. In fact, all possible creditors, present and contingent, are included in the provision, and the construction claimed, would give to all creditors, and not to sureties merely, the right to decline proving their demands, and thereby of retaining their claims. I understand the provision to have reference to the impeaching of the discharge for some of the causes specified in the fourth section ; and that it prevents creditors who have proved their debts, and thus participated in the fund created by the proceedings, from subsequently impeaching the validity of such proceedings. They will be deemed thereby to have waived all right of action and suit against such bankrupt.

In support of his construction, the defendant's counsel referred to the history of the similar provisions in the English Bankrupt Acts, and argued that the clause in the fifth section of our statutes was modelled upon that in the Act 49 Geo. III. ch. 121, § 8, which only *permitted* sureties to prove, and did not require them to do so. That section was otherwise construed, as I infer from the arguments in *Hewes* v. *Mott,* (6 Taunt. 329, and S. C. in 2 Marsh. R. 192,) and *Newington* v. *Keeyes,* (4 B. &

A. 493.) Previous to the Act of 49 Geo. III., the English bankrupt laws did not exonerate the bankrupt from liability to indorsers, sureties, &c., who were compelled to pay after the act of bankruptcy, and such persons could not prove their demands against his estate. This was remedied, except as to bail, by the Act last mentioned. Subsequently by the Bankrupt Act, 6 Geo. IV. ch. 16, (4 Evans' Statutes, 424, et seq.,) bail were included with sureties and persons liable for any debt of the bankrupt. By § 52, such persons may prove against the estate, and by § 121, the bankrupt who shall have conformed, &c., is "discharged from all debts due by him when he became "bankrupt, and from all claims and demands hereby made "proveable under the commission." (See *Archbold's Bankruptcy, by Flather,* 9th *ed.* 132. 303–4; *Eden on the Bankrupt Law,* 413.) And by the New Bankrupt Act, (5 & 6 Vict. ch. 122,) passed August 12, 1842, the same provisions are continued with but a slight change in the phraseology. (*Archbold's Bankruptcy, by F.,* 9th *ed. Appendix, p.* 48.)

As I understand the English statutes, the bankrupt's discharge, since the Act of 49 Geo. III., has been a bar to "*all* "*claims and demands proveable under the fiat,*" as it is expressed in the Act of 5 and 6 Victoria. This was clearly so under the Bankrupt Acts in force, when our Act of Bankruptcy was enacted.

I do not find, in those acts, any thing to throw doubt upon my conclusion as to the effect of the discharge in this case.

The bill thus establishes that Thayer is discharged from liability, both to the holder of the note and to the complainants. There was therefore no necessity for making him a party, and he is a competent witness to prove the usury alleged, so far as his interest is concerned.

The cases of *Miller* v. *M'Can,* (7 Paige, 451,) and *Savage* v. *Todd,* (9 ibid. 578,) sustain these positions. Thayer has no further interest in the defence to the note, which by his discharge, has become personal to the complainants.

It is conceded by the defendants, that he cannot be called as witness in the suit at law. He is still a party on the record in that suit.

I now come to the defendant's principal point, which is that the complainants have a remedy at law.

The bill charges that the usury is known only to Thayer and Hovey, and that the complainants are remediless in the premises, *unless they can procure the evidence of Thayer, or can obtain Hovey's admissions of the usury, by his answer to the bill or otherwise.* That they did not expect him to admit it by his answer, is manifest from their waiving the necessity of his answering upon oath. The bill also states that although Hovey is still the owner of the note, the complainants cannot examine him as a witness to prove the usury under the act of 1837. This was the settled rule in the courts of law when the bill was filed. *Bank of Salina* v. *Henry*, (1 Hill's R. 555.) The reversal of that judgment in the Court for the Correction of Errors, at the last August Term, (1843,) has established that Hovey, the real plaintiff, may be examined in the suit at law, to prove the usury.(a) This takes away one of the equitable grounds made by the bill.

The Chancellor has decided that this court will not entertain a bill for *the discovery* of the usury against the alleged usurer, who is the plaintiff at law in an action on an usurious note. *Perrine* v. *Striker*, (7 Paige 598.) This was on the ground that the statute of 1837, gave to the defendant at law, the benefit of such discovery by the examination of the plaintiff at the trial, which was all that could be obtained here ; and more effectual in eliciting the truth.

The question remains, is the defendant at law bound to rely upon such examination, either of the plaintiff on the record, or of the real plaintiff, provided he can by other testimony, accessible in this court, but not accessible in the suit at law, establish the usury.

The statute of 1837, (Laws of 1837, ch. 430,) in authorizing the examination of the plaintiff at law, did not limit the defence to that mode of proof. On the contrary, express provision is made for the interposition of this court ; and it is not merely permissive. It provides, that "the Court of Chancery *shall* de-

---

(a) Reported since in 5 Hill's R. 523. And see *Stevens* v. *White*, 5 ibid. 548.

clare" usurious notes, &c., to be void, and decree them to be cancelled, whenever it shall appear by the defendant's admissions, or *by proof*, that the same are usurious. There was certainly no design in the act of 1837, to *abridge* the powers of this court in reference to usurious securities. It dispenses with the former equitable pre-requisite to relief in such cases; the payment or offer of the principal sum loaned with lawful interest. Upon such an offer, this court would have entertained this suit, previous to the passage of the law of 1837.

The Chancellor has pointed out in *Perrine* v. *Striker*, the powerful temptation which besets the usurer to commit perjury in these cases, when the whole of his loan, with interest and costs, is to be gained or lost by his own testimony. It surely cannot be the policy of the law to multiply these temptations, nor is it consonant to good sense to require a defendant at law to rely upon the testimony of a witness so strongly interested against him, when a disinterested witness is at hand.

In *Norton* v. *Woods*, (5 Paige's R. 249,) the Chancellor sustained a bill for relief, on the ground that it appeared from the bill that a valid defence existed to the suit at law, but of which the defendant could not avail himself there, because the only witness who knew the facts upon which that defence rested, *and who was not interested in the matter in controversy*, had had been made a party to the suit.

The same principle was enforced in *Miller* v. *M'Can*, (7 Paige's R. 460–1,) and I perceive no reason why it is not applicable here.

In *Morse* v. *Hovey*, (9 Paige, 197,) a suit relative to this same note, the demurrer was allowed, because there was no allegation in the bill showing that the complainants had not a perfect defence at law. Thayer was then liable on the note. In this bill, the allegation is sufficiently made, as I have already stated it. The complainants say in effect that they cannot rely upon the oath of Hovey.

I think they are not compelled to rely upon it, and that they are entitled to relief here, if they show that they can establish the usury by evidence which they cannot introduce in their

defence on the trial at law.   A mere bill of discovery would not enable them to obtain the benefit of that evidence.

In this case, I am not sure but that a discovery from Cloyes in this court is indispensable for the complainants defence to the suit at law.   The note was made, and it matured before the passage of the act of 1837.   It is therefore incumbent on the complainants to prove, either that Cloyes received the note after that time, or that if he received it before, he did not purchase it in good faith.   The act of 1837 does not authorize the examination of the plaintiff at law, except "*for the purpose of proving the usury.*"   Both Cloyes and Hovey may be called and examined for that purpose, but can the defendants at law ask either of them any question in regard to the transfer of the note ?   Until the defendants at law show that the transfer is not bona fide, or was not made before the act of 1837, he cannot examine Hovey as *a plaintiff*.   And if they call him as *a witness* to prove the usury, may he not demur to answering, because of the penalties imposed upon the offence ?   The saving clause in section 8, applies only to the testimony of *the plaintiff*.

The complainants have not stated in their bill that they cannot prove this branch of their defence otherwise than by the oath of Cloyes; and I will not, therefore, express any opinion on these questions.

The only remaining objection to the bill is, that it waives Hovey's answer on oath, while it insists upon the oath of his co-defendant, Cloyes.

The case of *Bulkley* v. *Van Wyck*, (5 Paige, 536,) is decisive against this objection.   There the object of the bill was to show that certain property belonged to one of the defendants, and not to his children, and thus to subject it to the payment of the complainant's debt.   The Chancellor held that the interests of the debtor, and those of his children, were separate and distinct, and that the complainant might require his oath and waive that of his children.   (And see *Stephenson* v. *Stephenson*, 6 Paige, 353.)

Here there is no joint interest in the defendants.   The note belongs entirely to the one, or to the other.

The demurrer must be overruled with costs, and the defendants put in their answer, &c., in twenty days.

The same order will be made in the second suit, which depends on the same questions.